**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| REGIONS BANK, an Alabama bank | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17-853-DRH-SCW |
| | ) | |
| THE FAUSZ GROUP CO., et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER APPOINTING RECEIVER AND GRANTING INJUNCTIVE RELIEF**

Pending before the Court is Plaintiff's Motion for Appointment of a Receiver (doc. 28). Having considered the motion, together with the Affidavit of Stephen L. Quick, the Affidavit of George Rissmann, and the record as a whole, the Court finds as follows:

**FINDINGS OF FACT**

1. On or about February 9, 2015, Defendants, ARay, Inc. and The Fausz Group Co., as co-borrowers, signed and delivered to Plaintiff in St. Louis, Missouri, a certain Note ("First Note") payable in the original amount of Two Million Six Hundred Thirty-Eight Thousand Six Hundred Dollars ($2,638,600.00).

2. On or about February 9, 2015, Raymond G. Fausz, Jr. and Annette M. Fausz ("Individual Defendants") signed and delivered to Plaintiff their Unconditional Guarantees ("First Guarantees") of the First Note.

3. On or about February 9, 2015, Defendant, The Fausz Group Co., signed and delivered to Plaintiff a certain Note ("Second Note") payable in the principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00).

4. On or about February 9, 2015, the Individual Defendants signed and

delivered to Plaintiff their Unconditional Guarantees ("Second Guarantees") of the Second Note.

5.      On or about February 9, 2015, the Individual Defendants signed and delivered to Plaintiff their Mortgage, Assignment of Rents and Leases, and Security Agreement, encumbering the unimproved property commonly known and numbered as 315 Madison, Red Bud, Illinois and more fully described as follows:

> Part of the Northwest Quarter of the Southwest Quarter of Section 4, in Township 4 South, Range 8 West of the Third Principal Meridian, Randolph County, Illinois, more particularly described as follows:
>
> Beginning at an iron pin on the West line of Madison Street, (50 feet wide) said pin being 50 feet West and 10 feet South of the Southwest corner of Lot 7 of Block "F" of Charles Phillips' First Addition to the City of Red Bud as recorded in Plat Book "B" at Page 30 of the Randolph County Records; thence Southerly along said West line of Madison Street 65 feet to an iron pin; thence Westerly with a deflection angle of 90 degrees 09 minutes 45 seconds parallel with the South line of said Block "F", 140 feet to an iron pin; thence Northerly with a deflection angle of 89 degrees 50 minutes 15 seconds parallel with said West line of Madison Street, 65 feet to an iron pin; thence Easterly with a deflection angle of 90 degrees 09 minutes 45 seconds parallel with said South line of Block "F", 140 feet to the point of beginning.
>
> PIN: 13-117-016.00

6.      The said Mortgage was recorded in the Records of Randolph County, Illinois on February 13, 2015 as Document No. 2015R00492.

7.      On or about February 9, 2015, the Individual Defendants signed and delivered to Plaintiff their Mortgage, Assignment of Rents and Leases, and Security Agreement, encumbering the residential property commonly known and numbered as 207 Flower St., Waterloo, Illinois, and more fully described as follows:

Lot No. 5 of Block 15 of Trail's resurvey of Block 16 of Martin's addition to the Town (now City) of Waterloo, Monroe County, Illinois, situated in the City of Waterloo, County of Monroe and State of Illinois.

PIN: 07-25-203-020

8.    The said Mortgage was recorded in the Records of Monroe County, Illinois on February 12, 2015 as Document No. 375472.

9.    On or about February 9, 2015, the Individual Defendants signed and delivered to Plaintiff their Mortgage, Assignment of Rents and Leases, and Security Agreement, encumbering the residential property commonly known and numbered as 502 Walnut St., Waterloo, Illinois, and more fully described as follows:

Part of Tax Lot 1-S as shown by Plat in Surveyor's Official Plat Record "A" of Town Lots on Page 54, and part of a tract of land previously conveyed to Robert A. Schaeffer in the City of Waterloo as shown by Deed recorded in the Recorder's Office of Monroe County in Deed Record 92 on Page 268 more particularly described as follows:

Commencing at the Old Pipe which marks the point of intersection of the Southerly Right-of-Way Line of Walnut Street with the Easterly Right-of-Way Line of Moore Street, said pipe being the Northwest Corner of Tax Lot 1-H and the Northeast Corner of Tax Lot 1-HP; thence at an assumed bearing of South 3 degrees-30 minutes-00 seconds East, along the West Line of said Tax Lot 1-H, a distance of 159.73 feet to an old pipe which marks the Point of Beginning of the herein described tract of land; thence continuing South 3 degrees-30 minutes-00 seconds East, a distance of 200.27 feet to an iron bar, thence due West, a distance of 56.75 feet to an iron bar which lies on the Easterly Right-of-Way Line of the Gulf, Mobile and Ohio Railroad; thence North 24 degrees-42 minutes-00 seconds West, along said Easterly Right-of-Way Line of the Gulf, Mobile and Ohio Railroad along the chord of a curve a distance of 220.61 feet to an iron bar; thence South 89 degrees-46 minutes-30 seconds East, a distance of 136.70 feet to the Point of Beginning; containing 0.444 acres, more or less.

Subject to an easement for ingress and egress on, over, and across the following tract of land: A 15 foot wide tract of land lying parallel

and adjacent to and fifteen feet Easterly of the Easterly Right-of-Way line of the Gulf, Mobile and Ohio Railroad and extending from the Northerly line of the above described tract of land and Northwesterly to the South Right-of-Way line of Walnut Street.

PIN: 07-25-336-003

10.    The said Mortgage was recorded in the Records of Monroe County, Illinois on February 12, 2015 as Document No. 375473.

11.    On or about February 9, 2015, ARay, Inc. signed and delivered to Plaintiff its Mortgage, Assignment of Rents and Leases, and Security Agreement, encumbering the residential property commonly known and numbered as 421 S. Main St., Waterloo, Illinois, and more fully described as follows:

> Commencing at the Northwest Corner of Main and Elm Streets in the City of Waterloo, Illinois, thence Northwestwardly with the West Line of Main Street Forty-One (41) feet and Six (6) inches for a beginning point, thence continuing Northwestwardly Forty (40) feet, more or less, to the Southeast Corner of Lot formerly owned by H. Middendorf, thence Westwardly with South Line of said Middendorf's Lot One Hundred Twenty-Five (125) feet, more or less, thence Southeastwardly with the East Line of Lot No. One (1) of Block No. Seven (7) of Rose and O'Melveny's Addition, Fifty-Nine (59) feet and Six (6) inches to a post, thence Eastwardly parallel with the North Line of Elm Street One Hundred Twenty-Five (125) feet, more or less, to the place of beginning; also known and designated as Tax Lot 3-A of South Oulots in Section 25, Township 2 South, Range 10 West of the 3rd P.M., in the City of Waterloo, Monroe County, Illinois, as shown by Page 9 of Surveyor's Official Plat Record "A" (Town Lots) of Monroe County, Illinois Records.

PIN: 07-25-433-013

12.    The said Mortgage was recorded in the Records of Monroe County, Illinois on February 12, 2015 as Document No. 375471.

13.    On or about February 9, 2015, ARay, Inc. signed and delivered to Plaintiff its Mortgage, Assignment of Rents and Leases, and Security Agreement, encumbering the residential property commonly known and numbered as 1

Richard St., Waterloo, Illinois, and more fully described as follows:

> Lot 29 of "Lou-Del, Addition", a subdivision of part of Tax Lot No. 3 of Survey 721, CL 507 in Township 2 South, Range 10, West of the Third Principal Meridian, Monroe County, Illinois, reference being had to the Plat thereof recorded in the Recorder's Office of Monroe County, Illinois, in Book of Plats "B" on Page 124

> PIN: 07-13-153-006

14.    The said Mortgage was recorded in the Records of Monroe County, Illinois on February 12, 2015 as Document No. 375470.

15.    The Mortgages secure the obligations of ARay, Inc. and The Fausz Group Co. on the notes described above and further secure the obligations of the Individual Defendants on the guarantees described above.

16.    On or about January 20, 2017, Plaintiff notified all Defendants that they had defaulted and that Plaintiff had accelerated the remaining amounts due and owing under the Notes described above.  Plaintiff demanded payment in full.

17.    On or about February 9, 2015, ARay, Inc. and the Individual Defendants signed and delivered to Plaintiff two Agreements to Provide Insurance, which together apply to all the properties described above.

18.    Defendants are in default in their payment and other obligations under the promissory notes, mortgages, and agreements described above.  The balance due to Regions Bank on the foregoing notes in the aggregate (without including attorneys' fees and expenses) was $3,173,478.01 as of June 23, 2017.

19.    Defendants are currently in possession of the properties described in the Mortgages mentioned above.  The properties have not been occupied since February 9, 2015 when the Mortgages were granted to Regions Bank.

20.    Although the four residential properties described above were

acquired over a period of time beginning in the 1980's, Defendants have not completed the contemplated rehabilitation and remodeling of three out of the four residences. All four properties have maintenance and repair problems. Examples include the following:

a. The property at 1 Richard Street has been gutted. On February 15, 2018, Regions' inspectors found multiple types of damage and waste, including but not limited to evidence of multiple leaks in the roof, water on the main floor and basement, no drywall on walls or ceiling, no floor covering, rusted electrical panel in poor condition, rusted drain pipes in basement, and exterior door in carport boarded up.

b. The property at 421 Main St. in Waterloo was found it to be in very poor condition. Among its problems are that the exterior reflects a rusted metal roof that appears to be leaking; the sub-roof appears to have rotted in several places and insulation is falling out of the eaves; the sun room doorway is boarded up and one window is broken; siding is missing on one side of the house; and a hole is found in the side of the house. The interior reflects birds nesting in the attic, extensive water damage and mold throughout, water damage to the carpet and floor in several locations, leaking foundation, stairs so poor that they may require replacement, electrical panel rusted, animal waste and footprints in the basement, and other problems.

c. The property at 502 West Walnut was found to suffer from dry rotted wood siding with possible termite damage, missing exterior light fixtures with exposed wiring, uneven roof that may need replacement,

gutters down and missing, missing floor covering in some portions of the interior, missing toilets in two baths, vent covers and other trim missing in several places, and many more problems.

    d.  The property at 207 Flower Street was found to be only in fair condition. Problems observed inside it included animal waste in the living room, water stains on the ceiling in a bedroom indicating leakage, and an unfinished basement with uneven floor.

21.    The Court was provided a copy of a report and affidavit by an inspector who was engaged by Regions to inspect the residential properties, attached to which were photographs of the properties that were inspected. Overall, the residential properties have been badly neglected, have been denied essential maintenance, and have become subject to ongoing and serious damage from the weather and in some cases from intrusions by animals. Their condition appears to be deteriorating.

22.    The casualty insurer of the Walnut Street property sent a cancellation notice to the Defendants stating that effective on March 18, the insurance on that property is cancelled because of the poor exterior condition of the property.

**CONCLUSIONS OF LAW**

Upon the findings of fact set forth above, the Court enters the following conclusions of law:

23.    Pursuant to their Agreements to Provide Insurance found in Plaintiff's Motion Exhibit 1, ARay, Inc. and the Individual Defendants obligated themselves to obtain and maintain in force casualty insurance on the foregoing residential properties as further security for Plaintiff and its collateral for the obligations

owed by Defendants.

24.  Defendants have defaulted in that obligation in respect to the Walnut Street property.

25.  Pursuant to section 4.5 of the Mortgages, ARay, Inc. and the Individual Defendants obligated themselves to keep the residential properties in good repair, and to restore promptly any portion of the properties that may be damaged.

26.  Said Defendants have defaulted in these maintenance obligations.

27.  Pursuant to section 5.2(d) of the Mortgages, upon the occurrence of any Default, Defendants, ARay, Inc., Raymond G. Fausz, Jr. and Annette Fausz agreed that Plaintiff could apply to a court "and obtain appointment of a receiver of the subject property as a matter of strict right and without regard to: (i) the adequacy of the security for the repayment of the Secured Obligations; (ii) the existence of a declaration that the Secured Obligations are immediately due and payable; or (iii) the filing of a notice of default; and Mortgagor consents to such appointment."

28.  Defendants' failure to repair the properties and maintain them in proper repair puts Regions Bank's collateral in imminent danger of being further damaged and diminished in value.

29.  Because of Defendants' defaults in their obligations under the Promissory Notes, mortgages, and other loan documents, Plaintiff is likely to prevail on the merits in this action.

30.  Because there are no tenants in the residential properties, Defendants will suffer little or no harm from a Receiver taking possession and

control of the properties.

31.     Plaintiff has demonstrated cause for the appointment of a Receiver for the property and business described above.

32.     The probability of harm to Regions from denying appointment of a Receiver greatly exceeds any harm that Defendants will suffer from such appointment.

33.     The firm, OLS, LLC, d/b/a ATEC, and its predecessor, ATEC, Inc., has served as court-appointed Receiver in many cases in the St. Louis metropolitan area.  ATEC qualified to perform the duties of Receiver in this case.

34.     In view of the condition of the properties, it is appropriate to set the amount of bond for a Receiver in this case at $10,000.00.

## ORDER

**WHEREUPON, IT IS ORDERED:**

**A.     Appointment of Receiver**. OSP, LLC, d/b/a ATEC, of St. Louis, Missouri, is hereby appointed Receiver. The Receiver is hereby ordered and directed to take possession, custody, and control of the Receivership Estate (as hereinafter defined). The Receiver and his firm will be compensated at the firm's standard rate together with reimbursements of reasonable expenses, subject to the Order of this Court.

**B.     Receiver's Bond**.  Within twenty-one (21) days of the entry of this Order, the Receiver shall also post a surety bond in the sum of $10,000.00 (the "Receiver Bond"), to assure the faithful performance of the Receiver's duties hereunder. The cost of the bond will be an expense of the Receivership.  This Order shall become effective upon the Court's receipt of the Receiver's Bond.

**C.    Possession and Control of Receivership Estate**.

The Receiver is hereby authorized and directed to take immediate and exclusive possession, custody and control of the parcels of real property described above, together with all personal property found on the said premises; all tenements, hereditaments, and appurtenances thereof and thereto; all right, title and interests in and to any real property lying within the right- of-way of any street, open or proposed, adjoining said real property, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with said real property; all mineral rights, oil and gas rights, air rights, water or water rights, including without limitation, all wells, canals, ditches and reservoirs of any nature and all rights thereto, appurtenant to or associated with said real property; all proceeds, products, offspring, rents and profits from said real property; and all other property interests of any kind and nature appertaining to said real property; and all books and records pertaining to interests in and to said property. All of said property and interests described above shall comprise the "Receivership Estate."

**D.    Cooperation**.    Defendants and each of their respective agents, partners, members, employees, assignees, successors, representatives, and all persons acting under, in concert with, or for them shall (a) relinquish and turn over possession of the Receivership Estate to the Receiver upon its appointment becoming effective, (b) turn over to the Receiver and direct all their agents, servants, and employees to turn over to Receiver all keys, leases, books, records, books of account, banking records, statements and cancelled checks, and all other business records relating to the Receivership Estate, wherever located, and in

whatever mode maintained, and (c) generally cooperate with the Receiver to accomplish the purposes and intent of this Order.

E. **Receiver's Powers**. The Receiver is hereby given the powers and authority customarily held by receivers under federal law and necessary to accomplish the purpose of this receivership including, without limitation, the specific powers to:

(1)    Perform all services and take all actions necessary or advisable to carry on, operate, manage, care for, maintain, repair, insure, protect and preserve (collectively "Manage") the Receivership Estate and to perform any and all other duties typically performed by a chief executive officer, without further order of the Court.

(2)    Maintain, protect, collect, sell, liquidate, or otherwise dispose of Receivership Estate free and clear of all liens, claims and encumbrances (collectively, the "Adverse Claims") with such Adverse Claims to attach the proceeds of such sale, provided, however, that solely with respect to any tangible real or personal property having a value in excess of $50,000.00, the Receiver shall not sell or otherwise dispose of such property without prior court approval for such sale or other disposition.

(3)    Employ, supervise, discharge and pay all servants, employees, contractors, managers, accountants, attorneys, and other professionals the Receiver deems necessary or advisable to properly Manage the Receivership Estate;

(4)    Enter into or reject any or all leases or unexpired contracts of the Defendants, or any of them, and incur and discharge obligations of

Defendants, or any of them, deems necessary or advisable to Manage the Receivership Estate;

(6)     Upon approval of the Court after appropriate notice, to borrow funds from Plaintiff, other creditors of Defendants, or any of them, or third parties on an unsecured basis and issue one or more Receiver's Certificates for such indebtedness, and on such other reasonable terms as may be acceptable to the Receiver in order to meet the capital needs of the Receivership Estate in excess of the income from the Receivership Estate; provided, however, that Plaintiff may make advances for expenses pursuant to the terms of the Deed of Trust without the same being deemed a loan to the Receiver, and such advances shall be treated and repaid pursuant to the Deed of Trust;

(7)     Procure all local, state and federal or other governmental licenses, permits, and pay inspection, or other governmental fees the Receiver deems necessary or advisable to manage the Receivership Estate;

(8)     Pay taxes of any sort to the extent the governmental unit's entitlement to such payment relates to a period following appointment of the Receiver;

(9)     Institute such legal actions as the Receiver deems necessary to preserve and protect the Receivership Estate, and to maximize the value of the Receivership Estate, including but not limited to collecting accounts and debts from the customers and counter-parties of Defendants, or any of them, and to recover possession of assets of Defendants, or any of them, from persons who may now or in the future wrongfully occupy or possess

such assets;

(10)   Purchase and contract for all materials, service supplies and equipment necessary or advisable to Manage the Receivership Estate.

**F.**      **Claims against Defendants, or Any of Them**.   This Court shall exercise exclusive jurisdiction of certain claims against Defendants (or against any of the Defendants), consisting of claims that are secured by the parcels of real property described above or claims arising out of the ownership, possession, and/or operation of the said real property.   Any person (other than Plaintiff) having any such claim against Defendants or any of them, or against the Receiver, the Receivership Estate, or any of the properties described above, may file such claim with the Receiver at the following address: ATEC, Attn: Joe Vierling, 15455 Conway Road, Suite 355, Chesterfield, MO 63017.   Such claim shall be substantially in the form of Official Bankruptcy Form B10 (modified to suit this proceeding) and shall state the name and address of the claimant, the amount claimed, the basis for the claim, an indication whether the claim is secured or unsecured, and if secured, the document(s) granting such security or creating such lien shall be attached to the claim. The Receiver shall maintain a register of all claims submitted to it.   The Receiver may, in its discretion, apply to the Court for the establishment of a bar date for the filing of claims. If the Court sets a bar date, notice of such date shall be provided to all known creditors.

**G.**    **Injunction**.   From the date that this Order becomes effective, any creditor or party holding a claim of the types described above against Defendants, or any of them, or against any of the assets or properties of the Receivership Estate, is hereby enjoined from commencing or prosecuting any litigation, or

utilizing any other remedies, against Defendants, their assets, or the Receivership Estate, in any jurisdiction in which the Receivership Estate might be encumbered, impaired, or otherwise attached in connection with such proceedings, except that Plaintiff may, in its discretion, prosecute this civil action, enforce any judgment obtained herein, and proceed to enforce its power of sale under the Deed of Trust and other remedies under the Promissory Note. This Court shall have and retain original and exclusive jurisdiction over any matters relating to this Receivership. No person or entity may file suit against the Receiver, in its capacity as Receiver, unless otherwise authorized in advance by this Court. In the event the Receiver is served with process or is otherwise notified of any pending action which could result in liability on the part of the Receiver as Receiver or in a lien or other encumbrance against the Receivership Estate, if reduced to judgment, the Receiver shall notify the filing Plaintiff in such action of this Order, and Plaintiff shall immediately cease the prosecution of such action and shall serve a claim upon the Receiver in accordance with the provisions of this Order.

**H.** **Receiver's Reporting Obligations**. Within thirty (30) days after ·qualification hereunder, the Receiver shall file an inventory of all of the Receivership Estate of which he has taken possession pursuant to this Order. The inventory shall be updated from time to time within ten (10) days of any material additions to the Receivership Estate. Thereafter, quarterly interim reports shall be filed that shall reflect, among other things, the Receiver's fees and administrative expenses, including fees and costs of professionals authorized by the Court, incurred for each reporting period in the operation and administration of the Receivership Estate. The Receiver, subject to Court approval, is authorized

to employ professionals to assist him in all aspects of the Receivership. The fees and expenses of such professionals shall be an expense of the Receivership. The Receiver shall not be required to, but as reasonably necessary may, follow generally accepted accounting principles, or use auditors or accountants in the preparation of his reports to the Court.

I. **Application of Proceeds of Receivership Estate**. The Receiver is hereby authorized and directed to apply the revenue, issues, proceeds and profits collected by the Receiver in connection with the Management of the Receivership Estate, as follows:

**FIRST**, to actual and necessary expenses of the Receivership Estate, including, but not limited to the fees and expenses of the Receiver, the Receiver's professionals pursuant to Orders of Court, and any and all reasonable expenses incurred by the Receiver in the performance of his duties under this Order;

**SECOND**, to the repayment of any valid Receivership Certificate that Plaintiff has specifically agreed in writing shall have priority over Plaintiff's debt;

**THIRD**, to the payment of all fees and expenses, including attorneys' fees, incurred by Plaintiff in connection with this action or otherwise allowable to Plaintiff under the Promissory Note, and to reimburse Plaintiff for any amounts that may be advanced by Plaintiff for the purpose of maintaining, preserving or facilitating the sale or other disposition of the assets of Defendants, or any of them, or otherwise advanced in connection with the receivership;

**FOURTH**, to the payment of the debt evidenced and secured by the Promissory Notes until such debt has been paid in full;

**FIFTH**, to a fund to be held by the Receiver in one or more federally insured, interest-bearing accounts pending further order of this Court.

**J.** **Agents and Professionals of Receiver**. Subject to approval by the Court, the Receiver may employ such agents, professionals, independent contractors, and employees as may be needed to assist Receiver in managing or liquidating the Receivership Estate, provided the amount of compensation paid to such persons shall be comparable to that charged by similar persons for similar services. Receiver shall pay such at their ordinary and usual rates out of the Receivership Estate, subject to further Orders of the Court in the event of any objection thereto. All who are acting, or have acted, on behalf of the Receiver at the request of the Receiver are protected and privileged, with the same protections of this Court as the Receiver has.

**K.** **Law Enforcement**. The Receiver may request assistance of law enforcement officials when taking possession, or at any other time during the term of the Receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership Estate.

**L.** **Deposit Accounts**. The Receiver shall take possession from all depositories, banks, brokerages, and otherwise of any money on deposit in such institutions that falls within the Receivership Estate. The Receiver shall deposit monies and funds collected and received in collection with the Receivership Estate at federally-insured banking institutions or savings associations. Monies coming into the possession of the Receiver and not expended for any purposes herein

authorized shall be held by the Receiver pending further orders of this Court.

**M.** **Mail**. Receiver may issue demands in the name of the Receivership upon the U.S. Postal Service to gain exclusive possession and control of such postal boxes as may have been used by Defendants, or any of them, for the receipt of notices and other mail relating to the properties described above, and may direct that certain mail related to the Receivership Estate and its business be re-directed to the Receiver.

**N.** **Insurance**. The Receiver shall determine upon taking possession of the Receivership Estate whether in the Receiver's judgment there is sufficient insurance coverage. With respect to any insurance coverage in existence or obtained, the Receiver shall be named as an additional insured on the policies for the period that the Receiver shall be in possession of the Receivership Estate. If sufficient insurance coverage does not exist, the Receiver shall immediately notify the parties to this lawsuit and shall have thirty (30) calendar days to procure sufficient all-risk and liability insurance on the Receivership Estate (excluding earthquake and flood insurance) provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver shall seek instructions from the Court with regard to whether insurance shall be obtained and how it is to be paid for. If consistent with existing law, the Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance.

**O.** **Termination of Receivership**. Plaintiff must tile with the Court and serve notice on the Receiver within 48 hours of any event, of which the Plaintiff has knowledge that terminates the Receivership. Upon receipt by the Receiver of a copy of a deed that has been delivered to a buyer following upon an order of

foreclosure, or notice from Plaintiff that Defendants, or any of them, have cured the defaults existing under the Promissory Notes, or notice from Plaintiff that Plaintiff has accepted a deed in lieu of foreclosure, or upon the Receiver's closing of a sale or the last of a series of sales to third parties that completely dispose(s) of the Receivership Estate, and pursuant to an Order of the Court, the Receiver shall turn over possession, custody and control of the remainder of the Receivership Estate (if any) to Plaintiff, Defendants, or any of them, or to the successful purchaser (whichever is appropriate). Upon entry of the Court Order terminating this Receivership, the Receiver shall tum over the possession, custody, and control of the Receivership Estate in accordance with the Court Order, and, if consistent with existing law, the Receiver shall have no further liability as to the Receivership Estate; provided, however that the Receiver shall be entitled to retain in his possession monies, sufficient in the Receiver's business judgment, to pay the final fees, expenses and costs of the Receiver, his attorneys and accountants, and expenses of the Receiver and receivership. Discharge of the Receiver shall require a court order after a properly noticed motion approving the Receiver's Final Report and Account and any exoneration of the Receiver's bond, and directing the Receiver to distribute any remaining monies.

P. **Instructions in the Event of a Bankruptcy Filing**. In the event that a bankruptcy case is filed by or against Defendants, or any of them, during the pendency of this Receivership, Plaintiff must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of Plaintiff's receipt of notice of the bankruptcy filing. Upon receipt of notice that a bankruptcy bas been filed which includes as part of the bankruptcy estate any of the Receivership Estate

which is the subject of this Order, the Receiver shall immediately contact the Plaintiff and determine whether the Plaintiff intends to move in the Bankruptcy Court for an order for both: (a) relief from the automatic stay, and (b) relief from the Receiver's obligation to turn over the Receivership Estate under 11 U.S.C. § 543. If the party indicates no intention to make such a motion, then the Receiver shall immediately turn over the Receivership Estate to the appropriate entity (either the trustee in bankruptcy, if one has been appointed or, if not, then to the debtor in possession), and otherwise comply with 11 U.S.C. § 543. If the party who obtained the Receivership expresses an intention to immediately seek relief from both the automatic stay and to excuse the Receiver's obligation to turn over the Receivership Estate, then the Receiver is authorized to remain in possession and preserve the Receivership Estate pending the outcome of those motions in the bankruptcy court. The Receiver shall have the authority to respond to an involuntary bankruptcy filing on behalf of Defendants, or any of them.

Q.    **Final Report**. As soon as it is practicable after the receivership terminates, the Receiver shall file, serve, and set for hearing in this Court his Final Report and Account. Notice must be given to all persons of whom the Receiver is aware who have potential claims against the Receivership Estate. The motion to approve the final report and accounting, and for discharge of the Receiver, shall contain a summary of the receivership accounting including an enumeration, by major categories, of total revenues and total expenditures, the next amount of any surplus or deficit with supporting facts, a declaration under penalty of perjury of the basis for the termination of the receivership, and evidence to support an order for the distribution of any surplus, or payment of

any deficit, in the Receivership Estate.

**R.** **Liability**. The Receiver, and those agents acting under his control, shall have no personal liability in connection with any obligations owed by Defendants to its their creditors, and no creditor of Defendants, other than Plaintiff, shall seize or attempt to seize any property delivered to the Receiver hereunder, and no creditor, including any utility company, shall act to terminate any existing service, either as a means of attempting to collect an obligation of Defendants or on account of an obligation of Defendants.

**S.** **Costs and Expenses**. Nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of this Receivership that have been approved by Plaintiff and the Court.

**T.** **Notice**. The Receiver may apply at any time to this Court, with notice to all parties in interest, for further instruction and for further power necessary to enable the Receiver to properly fulfill his duties.

**U.** **Cancellation**. The bond of the Receiver shall be cancelled, and the Receiver discharged, upon this Court's approval of the Receiver's final accounting.

**V.** **Rights and Remedies**. The entry of this order appointing the Receiver shall not in any manner prejudice any of the other rights and remedies of Plaintiff under any of the obligations of Defendants, or under applicable law.

**W.** **Resolution**. The entry of this Order Appointing Receiver shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and Defendants, and the Receiver shall abide by the terms of any such

consensual resolution as may be approved by the Court.

**X.** **Amendments**.  The Receiver and the parties to this case may at any time apply to this Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties properly. The Court may grant any relief requested by the Receiver for which court approval is required without any further notice or hearings unless an objection to the requested relief is filed with the Court and served on the Receiver, his counsel, if any, and counsel for the Plaintiff within twenty (20) days after filing and service of the Receiver's request.

**Y.** **Replacement of Receiver**. The Receiver may he replaced for cause only by order of this Court after notice and an opportunity for a hearing.

**IT IS SO ORDERED.**

Judge Herndon
2018.03.28
15:18:23 -05'00'

**United States District Judge**